UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

Equal Employment Opportunity Commission,

Plaintiff,

v. Civil Action No. 01-705 MJD/JGL

Northwest Airlines, Inc., **AGREED ORDER**

Defendant.

The Equal Employment Opportunity Commission ("EEOC") and Northwest Airlines, Inc. ("NWA") have reached an agreement and order ("Agreed Order") as of December 30, 2004.

**WHEREAS**, this civil action was brought by EEOC against NWA under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, et seq., entitled *Equal Employment Opportunity Commission v. Northwest Airlines, Inc.*, Civil Action No. 01-705 MJD/JGL (D. Minn. 2001) ("the Action");

**WHEREAS**, NWA denies each and every material allegation by EEOC, specifically disclaims any admission of liability, and enters into this Agreed Order solely to avoid expensive and protracted litigation and to expeditiously resolve this matter;

**NOW, THEREFORE**, in consideration of the mutual promises set forth below and other good and valuable consideration, the adequacy of which is expressly acknowledged by EEOC and NWA, the

parties agree as follows:

**Definitions**

1. “Charging Parties” refer to Larry Lewis, Timothy Rued, and Serita Nellum.

2. “Claimants” refer to those additional individuals identified by the EEOC as persons on whose behalf it was seeking relief in this matter. These claimants specifically are: Horace Barnett III, Dennis Bergren, James Buckvold, David Buffa, Steven Day, Jeffery Dean, Elvin Donald, Daniel Dormer, Johnny Hudson, Charlie Jackson, Michael Larson, Brian Lay, Carey Melvin, Maurice Murray, Peter Olsen, Robert Peterson, Galen Prail, Donald Robson, Pete Rodriguez, Rene Seanez, Edward Simmons Jr., Elizabeth Stage, Mark Stevens, Lisa Sunnarborg, and David White.

3. “Medically Restricted Applicants” refer to those persons who after the date of this Agreed Order: (a) apply for and receive conditional job offers for positions that perform cleaner or equipment service employee (also referred to as “ESE”) functions on the airport ramp at NWA; (b) have a diagnosis of diabetes requiring insulin or epilepsy/seizure disorder requiring anti-seizure medication; (c) who have work restrictions placed on their prospective employment with NWA by Contract Physicians or are declared medically unfit by Contract

Physicians as a result of their diabetes or epilepsy; and (d) who are otherwise qualified to perform the ESE or cleaner functions for which they were conditionally offered employment.

4. “Contract Physician” refers to physician or physicians retained by NWA to conduct and/or review pre-placement physicals performed on Medically Restricted Applicants. Use of the term Contract Physician is not intended to imply and shall not be construed to mean that these physicians are agents or employees of NWA.

5. “Reasonable Accommodation” means reasonable accommodation as that term is used in the ADA, 42 U.S.C. §12101 et seq. (1996) and in cases interpreting the ADA, including, but not limited to, *U.S. Airways v. Barnett*, 535 U.S. 391 (2002) (which pertains to seniority and reasonable accommodation under the ADA).

6. “Absolute Zero” or “Zero Tolerance” policy refers to a purported blanket exclusionary policy whereby Medically Restricted Applicants are automatically excluded from employment because they potentially may pose a minute risk of unconsciousness, or because their medical condition purportedly conflicts with a zero tolerance of any risk.

7. These definitions are intended to be limited to this

Agreed Order, and shall not be interpreted to be of general usage. The use of these terms by the parties do not constitute an admission that such terms are appropriate outside the context of this Agreed Order.

**Findings And Non-Admission**

8. The terms of this Agreed Order constitute a fair and equitable settlement of this Action.

9. This Agreed Order shall not constitute an adjudication or finding on the merits of the case and shall not be construed as an admission by NWA of any violation of the ADA, 42 U.S.C. § 12101 et seq. (1996), or of any other law, rule or regulation or that any allegation of the EEOC has merit. NWA specifically denies that it applied or applies an Absolute Zero or Zero Tolerance policy. This Agreed Order likewise does not constitute an admission by the EEOC that any claim asserted by it in the Action was invalid or that any denial or defense asserted by NWA was valid.

**Scope**

10. This Agreed Order constitutes the full, final, and complete resolution of the EEOC’s claim that, between January 1, 1996 and the present, NWA purportedly violated the ADA by applying an Absolute Zero or Zero Tolerance policy and not hiring individuals with insulin dependent diabetes or epilepsy

requiring anti-seizure medication into positions that perform the airport ramp functions of ESE and cleaner, including the Charging Parties, Claimants and similarly situated individuals because of their condition. It resolves all claims by the EEOC that it did or could have brought under the ADA on behalf of the Charging Parties, Claimants and similarly situated applicants for positions that perform the ESE or cleaner functions.

11. EEOC reserves all rights to proceed with respect to matters like and related to these matters but not covered by the terms of this Agreed Order and to secure relief on behalf of aggrieved persons not covered by the terms of this Agreed Order.

**Term**

12. The term of the Agreed Order shall be two years from the Effective Date (the Court’s signing of the Agreed Order) hereof.

**Non-Monetary Provisions**

13. NWA will not apply an Absolute Zero or Zero Tolerance policy in evaluating a Medically Restricted Applicant. Within 45 days, NWA will inform Contract Physicians that they are not to apply an Absolute Zero or Zero Tolerance Policy

in recommending job restrictions for applicants for positions that perform ESE or Cleaner functions who have insulin-dependent diabetes or epilepsy requiring anti-seizure medication.

14. In those cases where Contract Physicians recommend restrictions regarding working at heights, driving, working rotating shifts, and/or working by themselves, following pre-placement examinations for Medically Restricted Applicants, NWA will examine any such recommended restrictions and will not give conclusive weight to any such recommendations of Contract Physicians.

15. NWA will individually assess the recommended restrictions for the Medically Restricted Applicants. It only will disqualify Medically Restricted Applicants from employment in the ESE function or cleaner function if they cannot, with or without reasonable accommodation, perform the essential functions of the cleaner or ESE function or if they pose a direct threat to the health or safety of themselves or others. In conducting the individualized assessment, NWA will apply the ADA and other applicable law. It will also consider input if offered from the Medically Restricted Applicant, including input regarding the experience of the Medically Restricted Applicant in previous positions comparable to the specific ESE function or

cleaner function (if any) applied for. If, as part of the individualized assessment, NWA chooses to engage an additional medical professional(s) to evaluate a Medically Restricted Applicant, NWA will bear the costs of having the Medically Restricted Applicant examined by the professional(s). NWA will have no obligation to make any assessment if the Medically Restricted Applicant refuses or fails timely to cooperate in assisting NWA in obtaining relevant information or otherwise unjustifiably fails to cooperate in the process.

16. Before disqualifying a Medically Restricted Applicant on the basis that the Medically Restricted Applicant is unable to perform the essential job function(s) with or without a reasonable accommodation, or because the Medically Restricted Applicant poses a direct threat to the health or safety of him or herself or others, NWA shall advise the Medically Restricted Applicant of the essential job function(s) that NWA believes the Medically Restricted Applicant cannot safely or adequately perform. NWA shall invite the Medically Restricted Applicant to provide within 15 days of the date of the notice of proposed disqualification additional information regarding the Medically Restricted Applicant’s ability to safely and adequately perform the essential job function(s), with or without a reasonable

accommodation, including but not limited to information from other treating physicians and information about the person's current and recent physical capabilities. NWA shall evaluate this information in good faith to determine whether, based on this additional information, the Medically Restricted Applicant can safely and adequately perform the essential job functions with or without a reasonable accommodation. NWA shall have no obligation to make this assessment if the Medically Restricted Applicant refuses or fails timely to cooperate in providing additional relevant information or otherwise unjustifiably fails to cooperate in the process.

17. NWA's compliance with paragraphs 14 - 16 shall not be construed in any way as an admission that the Charging Parties, Claimants or Medically Restricted Applicants are disabled or that NWA perceives or regards any such applicant as disabled or that any such applicant has a record of such disability.

18. Nothing set forth in this Agreed Order bars NWA from disqualifying the Medically Restricted Applicant for reasons other than those related to his/her seizure disorder/epilepsy or diabetes.

19. Nothing set forth in this Agreed Order bars NWA from disqualifying the Medically Restricted Applicant for reasons

related to his/her seizure disorder/epilepsy or diabetes where consistent with this Agreed Order, the ADA or necessitated by law or regulation.

20. NWA agrees that, within 45 days, it shall instruct employees in its Ground Operations Human Resources and Accommodations departments of NWA's responsibility for maintaining employee records under 29 C.F.R. §1602.14, and provide the EEOC with a certification of compliance with this provision.

21. NWA affirms that it has an accommodations policy in place and that it has an accommodations assessment group that is trained in the ADA and is available to assist NWA's Human Resources Department and NWA's Ground Operations Unit in responding to ADA issues related to Medically Restricted Applicants. NWA will verify that the accommodations assessment group has received training within the past year on the ADA, and specifically on the need for individualized assessments and the "direct threat" defense. NWA will provide the EEOC a list of the ADA training attended by the accommodations assessment group within 45 days of the entry of this Agreed Order.

22. NWA shall obtain verification from the Park Nicollet Clinic - Airport, a/k/a Airport Medical Clinic, that Contract

Physicians used by NWA from that Clinic to evaluate Medically Restricted Applicants have been trained in the ADA, and trained specifically on the “direct threat” defense. NWA will provide EEOC with a copy of such verification within 45 days of the entry of this Agreed Order.

23. Except in actions or proceedings brought to enforce this Agreed Order, this Agreed Order shall not be used as evidence or proof of any kind in any proceeding, whether brought by the EEOC or any other party, including but not limited to proof that NWA has violated the ADA.

**Monetary Terms**

24. Conditional upon the terms set forth in this Agreed Order and entry by the Court of the Order of Dismissal attached as Exhibit A, NWA agrees to pay a total of Five Hundred Ten Thousand Dollars ($510,000.00) in resolution of this matter.

25. The EEOC shall determine the portion of this fund that shall be distributed to each Charging Party and Claimant. Each Charging Party/Claimant shall receive his/her allocated distribution after he/she signs and returns by Federal Express to NWA within thirty (30) days from the date of this Agreed Order at NWA’s address identified below in paragraph 31 a release of ADA claims, attached as Exhibit B. If any Charging

Party fails or refuses to sign Exhibit B, NWA has the sole option to declare this Agreed Order null and void.

26. Within thirty days of receiving Exhibit B from the Charging Party/Claimant, NWA shall pay and distribute the designated amounts to the Charging Party/Claimant by mailing a check by Federal Express, signature required, to the last known address for the Charging Party/Claimant, which shall be provided to NWA by the EEOC. A copy of the check shall be submitted to the undersigned EEOC representative.

27. The amounts paid in accordance with this Section have been claimed as, and based on this claim shall be treated for all purposes under this Agreed Order, compensatory damages.

28. In the event that any check is returned as undeliverable, NWA shall notify the EEOC, which shall have twenty-one (21) calendar days to provide an alternative address, and NWA shall re-mail the check. The checks sent to Charging Parties/Claimants shall remain valid for one hundred eighty (180) days after the date of issuance. Any Charging Party/Claimant who fails timely to sign and return Exhibit B or fails to cash the check within the one hundred eighty (180) day period, shall forfeit his or her right to that monetary relief. Two hundred forty (240) days after the date of issuance, NWA

will provide the EEOC with a statement identifying the Charging Parties and Claimants who have not yet cashed their checks.

29. The foregoing in this Action shall be the entire amount NWA shall pay to anyone as a full settlement of this Action and for Charging Parties and Claimants release of claims. NWA shall have no liability for any further payments, up to and including, any attorney fees or costs.

**Dispute Resolution**

30. If at any time during the term of this Agreed Order there is a dispute between NWA and the EEOC concerning any aspect of this Agreed Order, representatives of the parties will meet in a good faith effort to resolve promptly the dispute. If the parties are unable to resolve the dispute themselves, they will use formal mediation in an attempt promptly to resolve the dispute. If the dispute remains unresolved, either party may seek a declaratory judgment from the Court, which shall retain jurisdiction during the term of this Agreed Order only as necessary to enforce the Agreed Order. Any party wishing to invoke the dispute resolution mechanism of this paragraph shall first be required to notify the other parties in writing of the existence of a dispute within 30 days of the event giving rise to the dispute. Notice shall be provided in accordance with paragraph 31 below.

31. Any documents, information, records, or notices required to be submitted by NWA to the EEOC under the terms of this Agreed Order shall be sent to Laurie A. Vasichek, Esq., Senior Trial Attorney, Equal Employment Opportunity Commission, Minneapolis Area Office, 330 Second Avenue South, Suite 430, Minneapolis, Minnesota 55401. Any documents, information, or notices required to be submitted by the EEOC to NWA under the terms of this Agreed Order shall be sent to Catherine P. Wassberg, Esq., Managing Director Operations Human Resources/Associate General Counsel, Department A1181, 2700 Lone Oak Parkway, Eagan, Minnesota 55121. NWA shall notify the EEOC every six months as to the identity of any Medically Restricted Applicants who were disqualified from ESE or Cleaner positions pursuant to paragraph 16, above. In addition to the identity of any Medically Restricted Applicants, NWA will provide the reasons for the disqualification of each applicant. The last report under this Agreed Order shall be due one month before the expiration of the term of this Agreed Order.

32. Should any provision of this Agreed Order be rendered invalid by a court or governmental agency of competent jurisdiction, it is agreed that this shall not in any way or manner affect the enforceability of the other provisions of this

Agreed Order which shall remain in full force and effect.

33. No waiver of any breach of any term or provision of this Agreed Order shall be construed to be, or shall be, a waiver of any other breach of this Agreed Order. No waiver shall be binding unless in writing and signed by the party waiving the breach.

34. This Agreed Order constitutes the entire agreement and final understanding between EEOC and NWA regarding the claims asserted by EEOC in the Action. EEOC and NWA intend it as a complete and exclusive statement of the terms of their Agreed Order. It supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof. Any representation, promise or agreement not specifically included in this Agreed Order shall not be binding upon or enforceable against either party. This is a fully integrated agreement. Any modification of, or addition to, this Agreed Order must be in writing and signed by EEOC and an authorized representative of NWA.

35. Each party has cooperated in the drafting and preparation of this Agreed Order. Hence, in any construction to be made of this Agreed Order, the same shall not be construed

against any party on the basis that the party was the drafter.

36. This Agreed Order shall be executed in two counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Photographic copies of such signed counterparts may be used in lieu of the originals for any purpose.

37. All parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force to the basic terms and intent of this Agreed Order and which are not inconsistent with its terms.

FOR DEFENDANT
NORTHWEST AIRLINES, INC.:

Dated: 12/30/04______

**s/ Peter B. Kenney, Jr.**
Peter B. Kenney, Jr.
Vice President, Law

FOR PLAINTIFF
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION:

Eric Drieband
General Counsel

James Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel
1801 "L" Street, N.W.
Washington, DC 20507

Jean P. Kamp
Regional Attorney

Rosemary Fox
Supervisory Trial Attorney
Milwaukee District Office
310 Wisconsin Avenue, Suite 800
Milwaukee, Wisconsin 53203
(414) 297-1860

Dated: 12/30/04

**s/ Laurie A. Vasichek**
Laurie A. Vasichek (#171438)
Tina Burnside
Deborah Powers
Senior Trial Attorneys
Minneapolis Area Office
330 Second Avenue South, Suite 430
Minneapolis, Minnesota 55401
(612) 335-4040

SO ORDERED.

Michael J. Davis
District Court Judge

Dated: ________________